UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| LINDA VILLARREAL, Individually and as Surviving Parent of A.L.V., Deceased, and RAMON MOYA Individually and as Surviving Parent of A.L.V., Deceased,<br><br>Plaintiffs,<br><br>VS.<br><br>HIDALGO COUNTY,<br><br>Defendant. | CIVIL ACTION NO. 7:22-cv-00003 |

## ORDER AND OPINION

The Court now considers Defendant "Hidalgo County's Motion for Summary Judgment"[1] and Plaintiffs' response thereto.[2] After considering the motion, the record, and the relevant authorities, the Court **GRANTS** Defendant's motion for summary judgement. The Court also revisits "Defendant Hidalgo County's Opposed Supplemental Motion for Sanctions as to Ramon Moya, a/k/a Roman Moya."[3]

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2020, Anthony Lee Villarreal was taken into custody by officers of the Hidalgo County Sheriff's Department.[4] He was placed into custody at the Hidalgo County Adult Detention Center.[5] Within hours and over the course of the next several days, Anthony experienced symptoms of alcohol and drug withdrawal.[6] He was attended to medically but ultimately suffered

---

[1] Dkt. No. 31.
[2] Dkt. No. 38.
[3] Dkt. No. 48.
[4] Dkt. No. 8 at 3, ¶ A.
[5] *Id.*
[6] *Id.*

cardiac arrest and was pronounced dead on October 10, 2020.[7] Villarreal made no court appearances between the time he was detained and his death.

Anthony's parents, Linda Villarreal and Ramon Moya, ("Plaintiffs") as heirs and wrongful death beneficiaries filed suit against Hidalgo County and the Hidalgo County Sheriff's Office on January 3, 2022.[8] The original complaint alleged causes of action pursuant to 42 U.S.C. § 1983 for violations of the 4th, 8th, and 14th amendments to the United States Constitution.[9] Regardless of the basis for the alleged violations, the essential basis of this suit is that "Mr. Villarreal was deprived of his right to adequate medical care which resulted in his untimely death."[10]

On March 18, 2022, the Court granted Defendant's motion to dismiss in part, dismissing only the Hidalgo County Sheriff's Department but maintaining the § 1983 claims against Hidalgo County.[11] After seeking and receiving leaves for a late filing, Defendant filed its motion for summary judgment in accordance with the new deadline.[12] On the submission date, Plaintiffs sought an extension of time to respond to Defendant's motion for summary judgment[13] and a motion for leave to file their second amended complaint.[14] The Court granted the extension of time to respond to Defendant's motion for summary judgment[15] but denied the motion for leave to file a second amended complaint.[16]

Additionally, Defendant moved for sanctions as to Plaintiff Ramon Moya on September 29, 2023.[17] The Court found it appropriate to compel Plaintiff Maya to appear for a deposition no

---

[7] *Id.* at 5-6, ¶ C.
[8] Dkt. No. 1.
[9] *Id.* at 4.
[10] Dkt. No. 8 at 6, ¶ F.
[11] Dkt. No. 14.
[12] Dkt. No. 31.
[13] Dkt. No. 39
[14] Dkt. No. 33.
[15] Dkt. No. 42.
[16] Dkt. No. 40.
[17] Dkt. No. 37.

later than November 1, 2023 and ordered Defendant to apprise the Court of the reasonable expenses incurred in more detail no later than October 20, 2023.[18] The Court also allowed Plaintiff Ramon Moya the opportunity to respond to the sanctions issue no later than October 27, 2023.[19] No response was filed.

The Court first turns to Defendant's motion for summary judgement.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court has the ability to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] The primary purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses" and should be interpreted to accomplish this purpose.[21]

To earn summary judgment, the movant must demonstrate that there are no disputes in regard to genuine and material facts and that the movant is entitled to summary judgment as a matter of law.[22] "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."[23] The movant "bears the initial burden of . . . demonstrat[ing] the absence of a genuine

---

[18] Dkt. No. 41.
[19] *Id.*
[20] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[22] *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).
[23] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *quoted in Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002); *accord Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (holding that, if the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements").

issue of material fact, but is not required to negate elements of the nonmoving party's case."[24] In other words, a movant may satisfy its burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[25] To demonstrate the absence of a genuine dispute of material fact, the movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[26] and must "articulate precisely how this evidence supports his claim,"[27] to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[28] If the movant fails to meet its initial burden, the motions for summary judgment "must be denied, regardless of the nonmovant's response."[29] Accordingly, the Court may not enter summary judgment by default,[30] but may accept a movant's facts as undisputed if they are unopposed.[31]

If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[32] The nonmovant's demonstration

---

[24] *Lynch Props. v. Potomac Ins. Co., 140 F.3d 622, 625* (5th Cir. 1998).
[25] *Celotex Corp.*, 477 U.S. at 325; *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.").
[26] FED. R. CIV. P. 56(c)(1); *see Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted) ("The movant . . . must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.").
[27] *RSR Corp. v. Int'l Ins. Co.,* 612 F.3d 851, 857 (5th Cir. 2010).
[28] *Celotex Corp.*, 477 U.S. at 322 (quoting FED. R. CIV. P. 56(c)).
[29] *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.,* 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).
[30] *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).
[31] *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *see* LR7.4 ("Failure to respond to a motion will be taken as a representation of no opposition")
[32] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) ("[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991) ("[T]he party responding to a summary judgment motion must support her response with specific, non-conclusory affidavits or other competent summary judgment evidence.").

cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[33] and a "mere scintilla of evidence" also will not do.[34] Even if the nonmovant produces more than a scintilla of evidence in its favor, such evidence may be "so overwhelmed by contrary proof" that summary judgment is still proper in favor of the movant.[35] The Court does not need to "credit evidence that is 'blatantly contradicted by the record,' especially by video or photographic evidence."[36] Neither self-serving allegations nor conclusory affidavits can defeat a motion for summary judgment supported by probative evidence.[37] "[T]he nonmoving party must adduce evidence sufficient to support a jury verdict."[38] The Court will countenance only reasonable inferences in the nonmovant's favor and will not indulge "senseless" theories or leaps in logic.[39] The nonmovant is "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[40] "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists."[41] Courts "will not assume 'in the absence of any proof . . .

---

[33] *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[34] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).
[35] *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (quoting Neely v. *Delta Brick and Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987)), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000).
[36] *Malbrough v. Stelly*, 814 F. App'x 798, 804 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).
[37] *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018); *see Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020) ("[A]ffidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").
[38] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).
[39] *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 468–69 & n.14 (1992).
[40] *Ragas*, 136 F.3d at 458 (emphasis added).
[41] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *see Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quotation and alteration omitted) ("When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case."); *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case.").

that the nonmoving party could or would prove the necessary facts,' and will grant summary judgment 'in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"[42] The Court is under no duty to sift through the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[43]

"A fact is 'material' if its resolution could affect the outcome of the action,"[44] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[45] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[46] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[47] The Court does not weigh the evidence or evaluate the credibility of witnesses and views all facts and inferences in the light most favorable to the nonmovant,[48] including "resolv[ing] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[49]

---

[42] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).
[43] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).
[44] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).
[45] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006); *see Bache v. Am. Tel. & Tel. Co.*, 840 F.2d 283, 287 (5th Cir. 1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("[T]o determine if an issue of material fact is genuine, we must then decide whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'").
[46] *Anderson,* 477 U.S. at 248.
[47] *Sheline v. Dun & Bradstreet Corp.,* 948 F.2d 174, 176 (5th Cir. 1991).
[48] Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996).
[49] *Boudreaux*, 402 F.3d at 540.

### b. Analysis

Defendant argues that Plaintiffs have no right to bring a claim on behalf of Decedent Anthony Villarreal under the 14th Amendment because Decedent's "conviction on April 27, 2017, and related arrest on October 6, 2020, rendered him a convicted prisoner during his 3 ½ day incarceration in Hidalgo County Adult Detention Center in October 2020. During his period of Community Supervision, his sentence was suspended, but "[the] judgment of conviction and the conditions thereof are still in full force and effect … .'"[50] Defendant contends that decedent was essentially a parolee and "[p]arolees who are detained for a violation of parole are considered convicted prisoners rather than pre-trial detainees."[51]

Plaintiffs, on the other hand, assert that "a person can simultaneously be both a pretrial detainee and a convicted inmate. This is the circumstance Anthony Villarreal faced here. Although he had been previously convicted of an offense, the revocation proceeding for which he was in jail and had not yet been resolved when he was killed."[52] The Court notes that Plaintiffs' motion for leave to file Plaintiffs' second amended complaint, which the Court denied, admitted that the 14th amendment claim was inapplicable here.[53] Nonetheless, the Court addresses this issue.

The parties are correct that "[t]he constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, and, with a relatively limited reach, from substantive due process."[54] "The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."[55] However, the Fifth Circuit has held "that the State owes the same duty

---

[50] Dkt. No. 31 at 18, ¶ 5.2 (quoting Dkt. No. 31-4).
[51] *Wakat*, 471 F. Supp. 2d at 766 (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).
[52] Dkt. No. 38 at 20, ¶ 5.16.
[53] Dkt. No. 33 at 3, ¶ B.
[54] *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (internal citations omitted).
[55] *Id.* (internal citations omitted).

under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm during their confinement . . . ."[56]

As for a Fourteenth Amendment claim, the Fifth Circuit has held "that the episodic omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs.[57]

Likewise, to prevail on an Eighth Amendment claim, Plaintiffs must show, amongst other things, that "[t]he official policy itself [is] unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result."[58]

Thus, no matter whether Anthony Villarreal is to be considered a pre-trial detainee or a convicted prisoner, the deliberate indifference standard applies. Therefore, the Court addresses whether Plaintiffs are able to prove deliberate indifference as required by either the Fourteenth or Eighth Amendment as a matter of law.

1. *Plaintiffs' Fourteenth Amendment Claim*

In the Fourteenth Amendment context, "a state jail official's liability for . . . omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."[59] That "Deliberate indifference, *i.e.*, the subjective intent to cause harm, cannot be inferred from a prison guard's failure to act reasonably. If it could, the standard applied would be more akin to negligence than

---

[56] *Id.* at 650.
[57] *Id.* at 647-48.
[58] *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)
[59] *Hare*, 74 F.3d at 650.

deliberate indifference."[60] To be sure, a due process claim can "never be based on a jail official's negligent failure to provide either medical care or protection from harm."[61] Thus, in order to prevail on this claim, Plaintiffs must prove that jail staff and medical staff had a subjective intent to cause harm to Anthony Villarreal.

> Defendant argues that
>
> Plaintiffs have broadly alleged deliberate indifference by unnamed, unidentified "confining officials" to Villarreal's "very serious medical needs over the course of hours and days." However, the only evidence in existence unequivocally establishes the opposite: that he received appropriate and timely medical care throughout his confinement, despite his failure to advise the staff of his abuse of alcohol and street drug use. Plaintiffs cannot prove that any jail staff or medical staff in the Hidalgo County Adult Detention Center engaged in any unconstitutional action, because no unconstitutional action occurred. Villarreal was provided reasonable and prompt medical care on the two occasions when he suffered seizures. On each occasion, within 30 minutes and 35 minutes, respectively, of jail staff being alerted [to] his medical need, he had been evaluated by an Infirmary nurse, an ambulance had been called, EMS had assumed medical care for Villarreal and proceeded to transport him to the hospital emergency room. In deposition, Forensic Pathologist, Dr. Norma Jane Farley, who conducted the autopsy on Villarreal opined that it was medically appropriate to send an inmate to the hospital for review and treatment after experiencing a 6-minute seizure (as Villarreal had on October 7, 2020). Further, once Villarreal finally disclosed his use of street Xanax to Ricardo Gonzalez, LVN, after his discharge from the hospital and return to the jail at about 3:30 a.m. on October 8, 2020, he was immediately placed on the Withdrawal Protocol ordered by the jail physicians for inmates withdrawing from benzodiazepines and was given the first dose. Three subsequent doses were made available and were offered to him at 8:00 p.m. on October 8th and at 8:00 a.m. and 8:00 p.m. on October 9th, but he refused to take them. Additionally, Villarreal's Jail Clearance paperwork with the suggestion for a neurological consult [for further evaluation and work-up] was immediately placed in the Doctors' Bin, so that the administrative nursing staff could set him up to be seen by one of the jail physicians at the first available clinic, where a physician could perform an evaluation and make that referral.[62]

The Court finds it necessary to detail exactly what steps were taken by Hidalgo County jail and medical staff in regard to Mr. Villarreal. On October 6, 2020 at 6:05 p.m., Mr. Villarreal was

---

[60] *Id.* at 649 (internal citations omitted).
[61] *Id.* at 642 (internal citations omitted).
[62] Dkt. No. 31 at 24-25, ¶ 5.16.

9 / 17

booked into the Hidalgo County Jail.[63] On October 7, 2020 at 9:44 p.m., Mr. Villarreal suffered a seizure.[64] Per the incident report, after it was reported by other inmates that Mr. Villarreal was having a seizure, Officer Garcia called for medical assistance in the unit where Mr. Villarreal was being housed.[65] Officer Garcia then grabbed the inmates arm and head for "his safety [as] inmate began to move around."[66] The indecent report then states that "inmate then stopped responding for a moment as LVN Anita Tried to get a response. Inmate then began to breath [sic]. Inmate then got frantic and a struggle ensued. Inmate was taken out of cell where [] Officer Garcia and Officer Cantu tried to get inmate to calm down. [Officer Garcia] maintained inmates right arm once inmate began to calm down. [Officer Garcia] and Officer Cantu assisted inmate on to wheelchair. Inmate was escorted to triage . . . ."[67] After being escorted to triage, Mr. Villarreal reportedly continued to struggle even to the point of trying to bite an officer.[68] The officers were able to get Mr. Villarreal to calm down and he began to answer questions and was able to change his soiled clothing "with no problems."[69] The incident report states that this was complete by 9:57 p.m. At some point during his stay in triage, LVN Anita advised the officers that Mr. Villarreal would need to be sent out via EMS.[70]

On October 7, 2020 at 10:49 p.m., Mr. Villarreal was admitted to Edinburg Regional.[71] The hospital observation record notes the medical comment, "seizures." Additionally, the records note that the hospital collected his blood, checked vitals, had Mr. Villarreal meet with a social

---

[63] Dkt. No. 38 at 1.
[64] Dkt. No. 31-7.
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] Dkt. No. 31-8.
[71] Dkt. No. 38-6.

worker, had a CT scan taken, and took a urine sample.[72] Mr. Villarreal was then returned at 3:28 a.m., presumably on the morning of October 8, 2020.[73] Ricardo Gonzalez, LVN, who was one of the nurses working when Mr. Villarreal returned from the hospital, was deposed on the events that occurred.[74] Mr. Gonzalez states that Mr. Villarreal initially denied any prior drug use but then on October 8th, after being in the jail since October 6th and suffering a seizure, admitted to using "street Xanax."[75] Mr. Gonzalez goes on to explain that "street Xanax" is nonprescribed Xanax that is usually "not pharmaceutical, so they're altered."[76]

After the seizure and now having knowledge that Mr. Villarreal was suffering from "street Xanax" withdrawal, hospital medical staff placed Mr. Villarreal on withdrawal protocol which consisted of "Vistaril 50 milligrams two times a day for seven days."[77] "[I]f a patient needs more medication after the seven days, we call the doctor and let them know . . . ."[78] Said withdrawal protocol is signed by Dr. Ivan Melendez and Dr. John Lung.[79] The protocol had been in place and unchanged for at least 9 years.[80]

At 1:15 a.m. on the morning of October 10, 2020, Officer Carreon was alerted by other inmates to Mr. Villarreal's condition.[81] Officer Carreon states that he "and Officer Segura went into cell 17 and saw that the inmate was shaking. I asked him how he was feeling he replied that he was fine."[82] After getting Mr. Villarreal in a wheelchair Officer Carreon notes that he and

---

[72] *Id.*
[73] *Id.*
[74] Dkt. No. 38-4.
[75] *Id.* at 12.
[76] *Id.*
[77] Dkt. No. 38-4 at 23.
[78] *Id.*
[79] Dkt. No. 38-2.
[80] Dkt. No. 38-3.
[81] Dkt. No. 38-12.
[82] *Id.* at 2.

Officer Segura "could see that inmates body was twitching[,] we rolled him to the entrance of the infirmary."[83]

At around 1:20 a.m. on the morning of October 10, 2020, upon arriving to the infirmary, Officer Garza reports that

> Inmate Villarreal appeared to be having a seizure, Nurse Runner Vidal and myself placed Inmate Villarreal on the ground due to being told by LVN Rick, once on the ground, inmate was being held down to him having a serve [sic] seizure, once inmate got out of the seizure, he became aggressive and combative towards officer and staff. LVN Rick recommended to place inmate in the restraint chair, SGT Garza gave the order to place inmate in the restraint chair.[84]

Officer Garza goes on to explain that Mr. Villarreal continued to be combative and was secured in the restraint chair.[85] At around 1:42 a.m., Mr. Villarreal suffered a second seizure, at which point staff removed Mr. Villarreal from the restraint chair and placed him on the ground where they held his head to keep him from causing any harm to himself.[86] Mr. Villarreal then became combative again after coming out of the seizure and was placed back in the restraint chair.[87] LVN Rick then made the call to notify EMS and have Mr. Villarreal transport him to the hospital. EMS arrived at 1:53 a.m.[88] EMS then departed at 2:01 a.m. en route to Edinburg Regional Hospital.[89]

The EMS report states that "[e]n route to the facility, patient's condition began to decline."[90] Upon arrival to the hospital, Mr. Villarreal "had no pulse, code blue initiated" at 2:23 a.m.[91] Code blue was called at 3:07 a.m.[92]

---

[83] *Id.*
[84] Dkt. No. 31-13.
[85] *Id.* at 2.
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] Dkt. No. 31-14.
[90] Dkt. No. 38-15.
[91] Dkt. No. 38-16 at 10.
[92] *Id.*

Nothing in this timeline indicates that jail and medical staff ever exhibited a subjective intent to cause Mr. Villarreal harm. Staff responded to Mr. Villarreal's initial seizure by requesting EMS transport to the hospital within 15 minutes of first being alerted to a problem.[93] Upon return, staff instituted withdrawal protocol.[94] After Mr. Villarreal suffered more seizures in the early morning hours of October 10, 2023, staff once again sent Mr. Villarreal to the hospital within 38 minutes of first being alerted to a problem.[95] Plaintiffs point to the length of time it took after each seizure for jail staff to call EMS to transport Mr. Villarreal to the hospital.[96] However, there is no indication that jail and medical staff intentionally refused to contact EMS for Mr. Villarreal's transport to the hospital. Quite the contrary, Defendant has provided a detailed timeline of what was occurring during each seizure and how Mr. Villarreal was being attended to during each incident. As a reminder, negligence cannot carry a due process claim. Thus, the Court finds that Plaintiffs are not able to show that Defendant Hidalgo County acted with deliberate indifference to the events leading up to Mr. Villarreal's death. Accordingly, even if the Court were to find that Mr. Villarreal were a pretrial detainee, Plaintiffs' Fourteenth Amendment claim would still fail as a matter of law.

2. *Plaintiffs' Eighth Amendment Claim*

"Section 1983 offers no *respondeat superior* liability."[97] Pursuant to the Supreme Court's finding in *Monell*, "[m]unicipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . .'"[98] Of the deliberate indifference standard of

---

[93] *Compare* Dkt. No. 31-8 at 1-2 *with* Dkt. No. 38-9 at 2.
[94] Dkt. No. 38-4 at 12.
[95] *Compare* Dkt. No. 38-12 *with* Dkt. No. 31-13.
[96] Dkt. No. 38 at 4 & 9.
[97] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)
[98] *Id.* (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

municipal liability, the Fifth Circuit has stressed that this "requirements must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability."[99]

As previously discussed, deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it "must amount to an intentional choice, not merely an unintentionally negligent oversight."[100] Thus, here Plaintiffs would be required to show that the Withdrawal Protocol was put in place with an intentional choice that it was counter to the accepted standard of care.

Plaintiffs' medical expert states that "Hidalgo County's medical staff acted intentionally, or exhibited gross negligence and conscious indifference when the County put in place the policy of administering Vistaril to inmates exhibiting signs of withdrawal without regard to what substance or substances the patient is withdrawing from."[101] He goes on to state that the Withdrawal Protocol "was put into practice with Mr. Villarreal, and approved by two medical doctors (Dr. Ivan Melendez and Dr. John Lung) who very intentionally wanted to treat patients with the ineffective and harmful protocol (Vistaril), ignoring and disregarding the applicable standard of care, and basic standard medical practices that are well known by all physicians."[102]

The medical experts' assertions, however, do not rise to the level of proving intent. Merely showing that the applicable standard of care was not followed would not prove that Drs. Melendez and Lung intentionally instituted an inappropriate standard. The protocol was implemented long before Mr. Villarreal was detained and while failure to keep up with evolving standards of care may constitute negligence, it does not demonstrate deliberate indifference. Even Dr. Lung himself

---

[99] *Id.* at 618.
[100]
[101] Dkt. No. 38-1 at 3.
[102] *Id.* at 4.

stated that in promulgating the policy they "tried to follow or do medical based – evidence based, evident based treatment . . . ."[103] Thus, Plaintiffs have failed to prove the third prong required for municipal liability, Defendant is entitled to summary judgment, and Plaintiffs' Eighth Amendment claim must fail.

### 3. Plaintiffs' Fourth Amendment Claims

"Fourth Amendment claims are appropriate only when the complaint contests the method or basis of the arrest and seizure of the person."[104] Defendant argues that "Plaintiffs have made no allegations of any constitutional violation in connection with the arrest of Villareal."[105] The Court finds that the record is completely devoid of allegations before Anthony Villarreal was placed in confinement at the Hidalgo County Adult Detention Center.[106] Accordingly, Plaintiffs' Fourth Amendment claim fails as a matter of law.

### III. DEFENDANT'S MOTION FOR SANCTIONS

On October 6, 2023 the Court granted Defendant's motion for sanctions as to Ramon Moya a/k/a Roman Moya.[107] Therein, the Court ordered Plaintiff Ramon Moya to appear for a deposition, ordered Defendant to notify the Court of reasonable expenses incurred in more detail, and set a deadline for Plaintiff Ramon Moya to file a response to the sanctions issues should he wish to do so.[108] Defendant has filed an affidavit outlining expenses incurred in more detail[109] but Plaintiffs failed to file a response to that affidavit. On December 20, 2023 Defendant supplemented their motion for sanctions informing the Court that Plaintiff Ramon Moya still had not appeared for his

---

[103] Dkt. No. 38-3 at 22.
[104] *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir.2000) (quoting *Brooks v. George County*, 84 F.3d 157, 166 (5th Cir.1996)).
[105] Dkt. No. 31 at 19, ¶ 5.3.
[106] *See* Dkt. No. 8 at 3-4, ¶ A (Plaintiffs' amended complaint alleges that Anthony Villarreal was arrested and taken into custody and then booked and placed in confinement. At no other point is the actual arrest discussed.).
[107] Dkt. No. 41.
[108] *Id.*
[109] Dkt. No. 45.

ordered deposition. Thus, Defendant requests "that the Court now strike Plaintiff Ramon Moya's pleadings and dismiss his claims with prejudice."[110] Plaintiffs filed a response to this motion.

Under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, the Court, in granting a motion to compel discovery, "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The Court must not order said payment if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."[111] The Court finds none of those factors present here. As further detailed in this Court's prior order, Defendant attempted in good faith to conduct the deposition without court action, Plaintiff's failure to cooperate was not justified, and there are no other circumstances to make an award of expenses unjust. Additionally, Plaintiff was given ample opportunity to be heard and chose not to respond to the motion. Accordingly, the Court finds that it must require the Plaintiff's attorney to pay Defendant's reasonable expenses incurred in making the motion.

Defendant's provided affidavit[112] alleges that Preston Edward Henrichson expended a total of 3.3 hours at $250.00 per hour for a total of $825.00 and his paralegal spent 5.4 hours at $100.00 per hour for a total of $540.00. Further, Mr. Henrichson lists $253.00 in expenses for a grand total of $1618.00.

---

[110] Dkt. No. 48 at 3.
[111] FED. R. CIV. P. 37(a)(5)(A).
[112] Dkt. No. 45.

In their response, Plaintiffs notify the Court that after attempts to locate Plaintiff Ramon Moya, his deposition was finally taken on January 3, 2024. Further, the parties have reached an agreement as to the sanctions being requested by Defendant. "The parties agreed that $1618.00 are the costs, including reasonable attorney's fees, incurred by Hidalgo County. The parties also agreed that the expenses of $1,618.00 should be considered court costs to be taxed against Plaintiff Roman Moya only."[113]

Because of the parties' agreement, the Court **DENIES AS MOOT** Defendant's motion for sanctions[114] but adopts the parties' agreement.[115] Thus, the Court hereby assesses $1618.00 as Court costs, taxable against Plaintiff Ramon Moya only, collectible upon final disposition of this action.

## IV. CONCLUSION AND HOLDING

Having considered Defendant's motion for summary judgment and Plaintiffs' response thereto, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact. Thus, the Court **GRANTS** Defendant's motion for summary judgment. This case will terminate upon entry of final judgment.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 30th day of January 2024.

_____
Micaela Alvarez
Senior United States District Judge

---

[113] Dkt. No. 49 at 2.
[114] Dkt. No. 48.
[115] Dkt. No. 49.